31 N.J. Super. 588 (1954)
107 A.2d 521
ISIAH COLBERT, PETITIONER-APPELLANT,
v.
CONSOLIDATED LAUNDRY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 19, 1954.
Decided August 3, 1954.
*590 Before Judges CLAPP, BURTON and ARTASERSE.
Mr. John F. Leonard argued the cause for the respondent.
Mr. Mortimer Wald argued the cause for the appellant (Mr. Abraham L. Honigfeld, attorney).
The opinion of the court was delivered by ARTASERSE, J.S.C. (temporarily assigned).
The Essex County Court set aside a workmen's compensation award for temporary disability and for medical and hospital expenses allowed by the Division of Workmen's Compensation. The petitioner employee appeals from this reversal.
*591 The facts are not in dispute. The petitioner was employed by the respondent as a laborer and on February 15, 1950, sustained an injury, arising out of and in the course of his employment with the respondent for which he required and received medical treatment. On October 25, 1950, the petitioner was awarded for said injury by the Division of Workmen's Compensation 20% of total partial permanent disability, in addition to 19 4/7 weeks for temporary disability. The last payment of compensation under the award of October 25, 1950 was made to the petitioner on about August 1, 1952. The record discloses that the petitioner suffered a relapse which required that he be confined to a hospital November 6, 1952 for eleven days and that he received physiotherapy treatment for almost seven months; that he had been under treatment continuously for about four months prior to November 6, 1952, and that about three weeks before said date he began to feel worse. The respondent was not notified immediately of the need for treatment caused by the relapse, but the petitioner filed a petition for compensation on December 26, 1952, which had been verified by him on December 17, 1952, in which he alleged that he had "suffered a relapse and is in need of further treatment." The respondent filed its answer to the employee's petition on January 13, 1953, setting forth therein that "the respondent denies that the petitioner has any increased disability and puts the petitioner to his proof."
On July 9, 1953, a hearing was had before the Division of Workmen's Compensation on said petition. The deputy director in an oral opinion decided that the petitioner had a subsequently incurring temporary increase in disability in late October, 1952, which continued for 13 weeks and which required treatment and hospitalization, all resulting from the original injury. On July 16, 1953, a determination, award and judgment of the Division of Workmen's Compensation was duly filed, whereby the petitioner was awarded 13 weeks for temporary disability and the respondent was ordered to pay for hospital and medical expenses incurred by the petitioner.
*592 The respondent appealed to the Essex County Court, which reversed the judgment of the Division of Workmen's Compensation on the ground that the statute makes no provision for subsequent temporary disability and medical expenses where a final award had been made, relying on Sassarro v. Wright Aeronautical Corp., 135 N.J.L. 366 (Sup. Ct. 1947), affirming 24 N.J. Misc. 57 (Com. Pl. 1946).
The single legal question involved in this appeal is whether or not an injured employee who had previously been awarded temporary disability and permanent disability can obtain compensation for temporary disability and medical expenses attendant upon a relapse where the relapse produced the temporary disability and occasioned the medical expenses and treatment but which resulted in no increase of permanent disability?
The Sassarro case is distinguishable from the instant case. There the petitioner had been awarded 20% partial permanent disability as a result of an injury to his hands, which award was fully paid but no temporary disability was awarded as no claim was made therefor. Seven months after the award, he voluntarily underwent an operation which successfully reduced his prior determined permanent disability, it being admitted that the permanent disability continued to exist but that there was no increase in disability of any kind prior to the operation. Thereafter the petitioner sought medical expenses and an award for temporary disability and filed a petition which recited that it was "filed for recurrent temporary disability and reimbursement of medical expenses incurred by reason of [an] operation performed upon petitioner's hands." The Sassarro petition was treated by both counsel and the court as an original claim petition and not a proceeding for review of a formal award under R.S. 34:15-27. This view was manifestly correct in that there was no disability increase attributable to the injury which would justify reopening under R.S. 34:15-27. There was nothing to modify. This position becomes evident when it is realized that the original award for partial permanent disability had been paid in full by the respondent and even though the *593 disability had diminished because of the operation, the money so paid to the employee pursuant to the award, could not be recovered by the employer as there is no provision in the Workmen's Compensation Act for such return. Sassarro v. Wright Aeronautical Corp., supra, page 367. The singleness of the Sassarro decision becomes obvious when it is considered that if the partial permanent disability had not been paid, the original award could have been modified under R.S. 34:15-27. In the light of the facts in the Sassarro case the decision there seems entirely sound. In Ducasse v. Walworth Manufacturing Co., 1 N.J. Super. 77 (App. Div. 1948), the petitioner's condition became worse almost immediately after the original award of compensation for both temporary and permanent disability, which was climaxed by an operation the results of which were not beneficial. The court there held he was entitled to be compensated for his increased disability stemming from the original injury, and that irrespective of prior awards for disability, additional compensation may be awarded where the disability is proved to have increased. Janvari v. Peter Schweitzer Co., 13 N.J. Super. 286 (Cty. Ct. 1951), affirmed 21 N.J. Super. 248 (App. Div. 1952). See also Lazzio v. Primo Silk Co., 114 N.J.L. 450 (Sup. Ct. 1935), affirmed 115 N.J.L. 506 (E. & A. 1935) where increased permanent disability compensation was allowed even though there was no increased disability before the treatment which resulted in the employee's death.
In the instant case it is undisputed that the petitioner had suffered a relapse resulting in temporary disability and then underwent medical treatment which successfully returned him to his prior determined and fixed 20% partial permanent status. Such an increase in disability, even though temporary, rather than permanent, brings petitioner within R.S. 34:15-27 which he has invoked. A relapse into 100% disability, albeit temporary, clearly falls within the statute's words, "on the ground that the incapacity of the injured employee has subsequently increased." It should be observed that this statute uses the words "disability" and "incapacity" synonymously. See the sentence following the *594 one above quoted, and also see Drake v. C.V. Hill & Co., 117 N.J.L. 290, 292 (E. & A. 1936), where Justice Heher uses both words with identical meaning. But see Calabria v. Liberty Mutual Insurance Co., 4 N.J. 64 (Sup. Ct. 1950), where the terms are differentiated in a chrome poison case, and Safety Insulated Wire & Cable Co. v. Court of Common Pleas of Hudson, 90 N.J.L. 114, 115 (Sup. Ct. 1917). The words "disability" and "incapacity" in their usual import cover temporary as well as permanent disability or incapacity, i.e., the incapacity to perform labor. This view, of course, rejects the dicta in the Sassarro case, 24 N.J. Misc. 57, 59, supra, which is merely a concession on the part of both counsel in that case to limit the meaning of "incapacity" and "disability" to permanent incapacity and permanent disability. Why construe narrowly a statute which courts construe liberally? A less liberal rule applied to claims arising under our Workmen's Compensation Act would do violence to the beneficent purpose intended to be effectuated by the act. Liberality of construction of the Workmen's Compensation Act has been firmly established and runs consistently through our cases on the subject. Granahan v. Celanese Corp. of America, Plastics Division, 3 N.J. 187, 193 (Sup. Ct. 1949).
The question to be decided is whether or not there is a statutory basis for awarding compensation for intermittent temporary disability for periods after a final award and for medical reimbursement? The court below cites three early New Jersey cases which allowed awards for recurring temporary disability. Johnson v. Mills, 39 N.J.L.J. 306 (Com. Pl. 1916); Napoleon v. Jersey City Coal & Ice Co., 14 N.J. Misc. 54 (Dept. of Labor 1935); Drexl v. Jurgensen, 19 N.J. Misc. 643 (Dept. of Labor 1941). Although these cases were not mentioned in the Sassarro case save in appellants' brief the court below felt that their theory had not been accepted by the former Supreme Court. But in our view the Sassarro case must be understood on the basis of its facts despite some dicta in both opinions in the case indicating that there can be but one period of temporary disability. *595 24 N.J. Misc. 57, 60; 135 N.J.L. 366, 369. Properly understood, the Sassarro case holds only that the petitioner had no standing to raise the issue of temporary disability which he had brought about himself in attempting to lessen or reduce partial permanent disability for which he had received full compensation. Actually the operation on Sassarro's hands reduced the partial permanent disability.
We believe that the theory of recurring temporary disability enunciated in the above three inferior court decisions is in accordance with the statute. We, therefore, conclude that a relapse into temporary disability justifies invoking R.S. 34:15-27.
Respondent urges that R.S. 34:15-12(a) re-enacted and amended by the Legislature after the Sassarro case, L. 1950, c. 175, L. 1951, c. 105, specifically refers to a single period of temporary disability and insists that the appellant seeks to read into the word "period" a plural meaning where none exists. However, the relevant portion of R.S. 34:15-12(a) reads: "This compensation shall be paid during the period of such disability, not, however, beyond three hundred weeks." R.S. 34:15-38, as amended L. 1945, c. 74, provides that the period runs "to the first working day that the employee is able to resume work and continue permanently thereat"; * * * and subtract therefrom "any days and fraction thereof the employee was able to work during this time." Monaco v. Albert Maund, Inc., 17 N.J. Super. 425, 430 (App. Div. 1952), and cases cited therein. A period is generally but not always a continuous period of time. English v. Blacker, 297 Mass. 76, 8 N.E.2d 343 (Sup. Jud. Ct. 1937). But see Van Dresser v. Firlings, 305 Mass. 51, 24 N.E.2d 969 (Sup. Jud. Ct. 1940); National Labor Relations Board v. Hudson Motor Car Co., 136 F.2d 385 (C.C.A. 6 1943).
The respondent next contends that the statute R.S. 34:15-14 as amended L. 1945, c. 74, specifies but a single waiting period and that if the Legislature had intended disjunctive periods of temporary disability it would have specified more than one waiting period. Therefore, it only had a single *596 period of temporary disability in mind. This is not persuasive for the statute by its very terms states "whether the days of disability immediately follow the accident, or whether they be consecutive or not." R.S. 34:15-14, as amended L. 1945, c. 74. In reading the statute as a whole, it is inescapable that the Legislature meant to view the "period" during which a claimant suffered temporary disability as one from which is subtracted "days * * * the employee was able to work," R.S. 34:15-38, as amended L. 1945, c. 74, and to require but a single waiting period. As a matter of fact the waiting period, constituting seven days whether consecutive or not, where the total period of disability extends beyond four weeks, is not to be subtracted from the total period of temporary disability to which the claimant is entitled. R.S. 34:15-38, as amended L. 1945, c. 74.
Respondent also stresses the conclusive aspect of an award as stated in R.S. 34:15-58, N.J.S.A. However, R.S. 34:15-27 cuts across this feature of an award. Tucker v. Frank J. Beltramo, Inc., 117 N.J.L. 72 (Sup. Ct. 1936), affirmed 118 N.J.L. 301 (E. & A. 1937); Cirillo v. United Engineers & Constructors, Inc., 121 N.J.L. 511 (E. & A. 1939); Hopler v. Hill City Coal & Lumber Co., 5 N.J. 466 (Sup. Ct. 1950).
We conclude that compensation for intermittent periods or for recurrent intervals of temporary disability may be recovered under the Workmen's Compensation Act. R.S. 34:15-27 allows the appellant here to reopen the award; R.S. 34:15-38 permits a recovery for intermittent or recurrent intervals of temporary disability and R.S. 34:15-12(a) authorizes an award for temporary disability up to three hundred weeks.
Finally, as to the reimbursement of this petitioner for, and also for the payment of, medical and hospital expenses, involves an inquiry not free of complexity. At the oral argument on this appeal the respondent contended that the medical expenses were unauthorized and that it had no prior notice of the same and that the medical and hospital treatments were started several months before the filing of the *597 petition, and therefore, should not be assessed against it. The relapse of the petitioner which caused his total disability, although temporary in nature, came about suddenly which necessitated his immediate confinement in a hospital on November 6, 1952. The record indicates that the petitioner was in "acute distress." It was not a condition which could wait until a petition was filed to permit the Division of Workmen's Compensation to investigate the need for treatment and to give the employer an opportunity to be heard thereon. To compel an injured employee to do so when in acute distress as a result of a relapse stemming from the original injury even though after the original award for temporary and permanent compensation would be inhuman, unwarranted and violative of the spirit of the Workmen's Compensation Act. We believe that such a situation comes within the exception set forth in R.S. 34:15-15 "unless the circumstances are so peculiar as shall justify, in the opinion of the workmen's compensation bureau, the expenditure assumed by the employee for such physicians' treatment and hospital services, apparatus and appliances." We conclude that this matter is controlled by Bobertz v. Township of Hillside, 126 N.J.L. 416 (E. & A. 1941). Moreover, there was only an award for reimbursement and payment for treatment received from the time of the relapse. No award was made for treatment prior to that time.
The remaining question is whether the petitioner is entitled to medical expenses on a re-opening under R.S. 34:15-27? Ducasse v. Walworth Manufacturing Co., supra, cited by petitioner, does not indicate whether or not the award included the medical expenses of the operation which led to increased permanent disability. Nor does the opinion indicate that this point was raised. Petitioner has also referred us to Janvari v. Peter Schweitzer Co., supra, where the claimant definitely did not seek such medical reimbursement. See also Hopler v. Hill City Coal & Lumber Co., supra, on page 471, where Justice Burling declares that the review under R.S. 34:15-27 "is limited * * * of the disability, insofar as it may have subsequently increased or diminished." *598 Nevertheless, it is our considered opinion that these cases do not preclude the award of medical expenses legitimately undertaken to decrease an increase in disability resulting from the condition caused by the injury even where a prior final award of partial permanent compensation has been made. Note the broad general scope of R.S. 34:15-15; Cf. Van Tuyl v. Federal Shipbuilding, etc. Co., 29 N.J. Super. 285 (Hudson Cty. Ct. 1954).
The judgment below is reversed.