192 N.J. Super. 31 (1983)
469 A.2d 58
JANE M. WILLIAMS, PETITIONER-APPELLANT,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF DEPTFORD, GLOUCESTER COUNTY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1983.
Decided November 16, 1983.
*32 Before Judges BISCHOFF, PETRELLA and BRODY.
John E. Collins argued the cause for appellant (Selikoff & Cohen, attorneys).
Betsy Shain argued the cause for respondent (Capehart & Scatchard, attorneys; H. Louise Orth on the brief).
Regina Murray Mahoney, Deputy Attorney General, argued the cause for the State Board of Education (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
The majority opinion of the court was delivered by PETRELLA, J.A.D.
The novel issue presented on this appeal involves an interpretation of a provision in N.J.S.A. 18A:30-2.1 authorizing continuation of salary during absence from work for up to one calendar year due to a personal injury caused by an accident arising out of and during the course of employment. An absence under that provision is not charged to annual or accumulated sick leave.
*33 Petitioner Jane M. Williams (Williams) claimed entitlement to her full salary for a recurrent absence from work more than two years after the incident in which she was injured in 1977 while at her "post of duty."[1] She asserted that the most recent absence was also due to the 1977 injuries she received during the course of her employment as a special education teacher with the Deptford Township Board of Education (Board). Because her aggregate absences due to her injuries from that incident did not add up to a full year, Williams claimed she should receive her full salary without charging any part of it to her annual or accumulated sick days. She acknowledges, however, an appropriate offset against her salary for temporary disability awards in workers' compensation. The Board denied liability contending that under the statute such a payment was only authorized for up to one calendar year from the date of the accident. On appeal to the Commissioner from the Board's ruling, the matter was heard before an Administrative Law Judge (ALJ) who rendered an initial decision upholding the determination of the Board. The Commissioner of Education adopted the decision of the ALJ. On a further appeal to the State Board of Education, the Commissioner's decision was affirmed.
The facts are not disputed. Williams was employed by the Board since September 1972 as a special education teacher. She sustained injuries on November 11, 1977 during school hours and on school property while attempting to restrain an unruly student. As a result of her injuries she was absent from her employment for one week in December 1977, during which she was paid her full salary without her absence being charged against her annual or accumulated sick leave. In October and November 1979 she was again absent from employment for six weeks. She claimed that the 1977 injuries were the cause of this absence. During that time the Board paid Williams her full *34 salary without charging the absence to accumulated or annual sick leave.[2]
On January 12, 1981 Williams was again absent from employment because of the 1977 injuries. Although the Board paid Williams her full salary, this absence was charged against her annual and accumulated sick leave.[3] The Board took the position that N.J.S.A. 18A:30-2.1 obligated it to pay, without charging annual and accumulated sick leave, only for those absences from post of duty which occurred within one year from the date of the original 1977 work-related injuries. This determination by the Board precipitated the proceedings that have resulted in this appeal by Williams.
While the matter was pending before the ALJ, Williams amended her petition to allege that the Board waived any right to assert that benefits paid under the statute ceased after November 11, 1978 (one year from the date of the 1977 accident) because it had paid her for her absence in October and November 1979 without charging it against her sick time. She had been paid workers' compensation temporary disability benefits from January 12, 1981 through the end of the 1980-1981 school year and returned to work in the 1981-1982 school year.
On this appeal Williams argues that N.J.S.A. 18A:30-2.1 and N.J.S.A. 34:15-1 et seq. should be construed in pari materia; that the "period of such absence for up to one calendar year" in N.J.S.A. 18A:30-2.1 should be considered to include disjunctive segments of time which may be aggregated, even if involving *35 dates beyond one calendar year from the date of the accident or injury. Williams also argues that the issue of excess payments should not have been considered by the administrative agency because it had not been properly asserted by the Board and thus had been waived.
We initially address whether the education statutes and the Workers' Compensation Act should be read in pari materia; and then the correct time frame to be used for the period during which payment for absence is to be made under N.J.S.A. 18A:30-2.1.
N.J.S.A. 18A:30-2.1 provides:
Whenever any employee, entitled to sick leave under this chapter, is absent from his post of duty as a result of a personal injury caused by an accident arising out of and in the course of his employment, his employer shall pay to such employee the full salary or wages for the period of such absence for up to one calendar year without having such absence charged to the annual sick leave or the accumulated sick leave provided in sections 18A:30-2 and 18A:30-3. Salary or wage payments provided in this section shall be made for absence during the waiting period and during the period the employee received or was eligible to receive a temporary disability benefit under chapter 15 of Title 34, Labor and Workmen's Compensation, of the Revised Statutes. Any amount of salary or wages paid or payable to the employee pursuant to this section shall be reduced by the amount of any workmen's compensation award made for temporary disability. (Emphasis added).
Williams argues that "N.J.S.A. 18A:30-2.1 must be construed in a manner which is harmonious with the Workers' Compensation Act" and that this court "should look for guidance to prior decisions ... construing the workers' compensation statutes." She relies on Theodore v. Dover Bd. of Ed., 183 N.J. Super. 407, 415 (App.Div. 1982), in which we held that the phrase "accident arising out of and in the course of employment" as used in N.J.S.A. 18A:30-2.1 "was intended to have precisely the same meaning as it does within the context of the Workers' Compensation Act." Support for the conclusion in Theodore was found in the statement accompanying the 1967 amendment of the statute, which said that the purpose of the amendment was to "provide leave of absence with pay in cases of injuries or illness arising from employment and subject to the Workman's Compensation *36 Act." Ibid. The nature of the petitioner's accident in that case was reviewed in light of the workers' compensation cases, and we concluded there that it was a compensable accident in the workers' compensation scheme, and it was also within the scope of N.J.S.A. 18A:30-2.1. However, our decision in Theodore was only concerned with the construction of the phrase "an accident arising out of and in the course of his employment." It did not deal with the language presently before us delineating the length of time for which the local Board is required to make full salary payments to injured employees without charging that time against annual sick leave or accumulated sick leave. Nothing in Theodore suggests that any other portion of N.J.S.A. 18A:30-2.1 is to be construed in conjunction with or in light of the Workers' Compensation Act.
Appellant also argues that the maxim that the Workers' Compensation Act is to be liberally construed to bring as many cases as possible within its coverage should be applied here to result in reading the two statutes in pari materia. However, the statute before us in this case is not part of the Workers' Compensation Act, but is rather part of the statutory scheme governing and regulating the educational system in New Jersey. Broadly viewed, the Workers' Compensation Act and N.J.S.A. 18A:30-2.1 both share a concern, in a way, with methods of compensation of employees for personal injuries sustained in accidents arising out of and in the course of their employment. But this is only a broad or general similarity. The rule of in pari materia is only invoked to aid in the construction of statutes that pertain to the same subject matter. State v. DiCarlo, 67 N.J. 321, 325 (1975). In DiCarlo the two statutes pertained generally to narcotic drugs and the Supreme Court refused to construe the motor vehicle statute, N.J.S.A. 39:4-50(a), to require the same definition of narcotic drug as in section 2 of the Controlled Dangerous Substances Act. N.J.S.A. 24:21-1 et seq.
It is true that each may be said to pertain, in a way, to the same subject matter  narcotic drugs. But there the similarity ends. The statutes clearly do *37 not have the same purpose or object, and it is identity or similarity of purpose or object that most convincingly justifies resort to the rule of in pari materia as an aid in statutory construction. The adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends will normally not justify applying the rule.
As between characterization of the subject matter with which a statute deals and characterization of its object or purpose, the latter appears to be the more important factor in determining whether different statutes are closely enough related to justify interpreting one in the light of the other. For example, it has been held that where the same subject is treated in several acts having different objects the rule of in pari materia does not apply. 2A Sutherland, Statutory Construction, § 51.03, p. 298 (4th ed. 1973). [State v. DiCarlo, 67 N.J. at 325].
The court in DiCarlo found that the purposes of the two statutes involved were quite different. Likewise, we find sufficient differences in the two statutes here to persuade us that they need not be read in pari materia with respect to the language at issue even though we interpret the language in both statutes to allow for intermittent absences within the allowable time frame. The Workers' Compensation Act "is humane social legislation designed to place the cost of work-connected injury on the employer who may readily provide for it as an operating expense." Hornyak v. The Great Atlantic & Pacific Tea Co., 63 N.J. 99, 101 (1973). The school laws were enacted for a very different purpose and to implement the constitutional mandate of a thorough and efficient education. Allen v. Bd. of Ed. of Passaic, 81 N.J.L. 135, 140 (Sup.Ct. 1911), aff'd o.b. 84 N.J.L. 402 (E. & A. 1913).
Similarly, the difference in purpose between Civil Service sick leave provisions and the Workers' Compensation Act impelled us to refuse to apply the rule of in pari materia in Morreale v. State of N.J. Civil Service Comm., 166 N.J. Super. 536 (App.Div. 1979), certif. den., 81 N.J. 275 (1979). We there rejected the claim that the State was required to grant plaintiff disability sick leave because her disability was covered by workers' compensation. The appellant in Morreale was employed by the State and sustained an injury in a fall on a sidewalk off State property while on her lunch hour. The injuries temporarily prevented her from working. She received a workers' compensation *38 award and then requested sick leave disability benefits under a Civil Service Commission regulation providing that any State employee disabled because of an occupational injury or disease could be granted a leave of absence with pay for a certain period of time less any compensation award. Morreale, 166 N.J. Super. at 538. She appealed the denial of her claim arguing that the Civil Service regulation and the workers' compensation statute used the same language to refer to injuries received in the course of employment, and therefore a qualifying injury under the workers' compensation laws should also qualify under Civil Service regulations. This court disagreed, holding that "[t]he respective statutes sought to be analogized by appellant have wholly different ends and purposes, and the differences warrant different rules of construction in their application." Id. at 539. We observed that while the workers' compensation statute was designed to relieve the employee of the burden of paying for work-connected injuries, the Civil Service Act "has the different objective of achieving an efficient public service system for the welfare of all citizens." Id. at 539.
The decision in Morreale is reconcilable with that in Theodore v. Dover Bd. of Ed., supra, 183 N.J. Super. at 407 because the Legislature, by the statement appended to the 1967 amendment to N.J.S.A. 18A:30-2.1, made clear its intention that the leave of absence with pay provision for an "accident" applied to those injuries arising from employment and subject to the Workers' Compensation Act. There was no similar reference to the Workers' Compensation Act in the Civil Service regulations for the Morreale court to consider.
On the other hand, there is no suggestion that the time limitation present in N.J.S.A. 18A:30-2.1 and the nonchargeability of sick leave during that period was likewise intended to be read in conjunction with a specific provision of the workers' compensation law. The second sentence of section 2.1 points up a distinction between the two laws. Unlike the workers' compensation requirement, payments under the education law are *39 made without any waiting period and during the period the employee received or was eligible to receive temporary disability under the workers' compensation laws, and they are coupled with a preservation of sick leave time. N.J.S.A. 18A:30-2.1 also provides for the reduction of salary payments by the amount of any workers' compensation award made for temporary disability.[4]
The phrase that is the subject of the dispute between the parties here is "the period of such absence for up to one calendar year." There is nothing in the legislative history that sheds light on the meaning of that phrase.[5] The use of the article "the" before "period" would seem to indicate a single period or time frame might be intended. Although standing alone that might seem to negate interrupted periods of absence, that is not necessarily the case because the term "period" can refer to a single period of prescribed length which can have interruptions within it without creating new periods.[6]
Williams argues by analogy to N.J.S.A. 34:15-38 in the workers' compensation law, which allows intermittent temporary *40 disability payments. Such a construction of the workers' compensation statute was accepted in Colbert v. Consolidated Laundry, 31 N.J. Super. 588 (App.Div. 1954). N.J.S.A. 18A:30-2.1 does contain the word "period," which is likewise contained in N.J.S.A. 34:15-38, however, there are significant differences in the qualification and description of that word in the two statutes which further militate against an in pari materia reading. First, N.J.S.A. 34:15-38 specifically provides for intermittent payments of temporary disability because it allows for a deduction for periods when the employee was able to work. Thus, there is a clear indication in that statutory language that intermittent time frames were allowed. The balance of the phrase "period of such absence for up to one calendar year" in N.J.S.A. 18A:30-2.1 is significant, and we have to read the statute in its entirety and give effect wherever possible to all the words used. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 68 (1978); Gabin v. Skyline Cabana Club, 54 N.J. 550, 555 (1969); Foy v. Dayko, 82 N.J. Super. 8, 13 (App.Div. 1964). In analyzing the statute, we also have to consider the significance of the use of the word "calendar" modifying the word "year." That meaning becomes evident when it is considered that an academic or school year, N.J.S.A. 18A:29-6, is normally less than 12 full months and that there are statutes in the education law effectively describing a school work year as 200 days. See N.J.S.A. 18A:30-6. The academic year does not include the summer vacation. See, e.g., N.J.S.A. 18A:28-5; 18A:29-3; 18A:29-6, and 18A:60-8.
We recognize that the term "calendar year" normally and in common usage refers to a year beginning January 1 and ending December 31. See Newman v. Fair Lawn, 31 N.J. 279, 283 (1960). However, it was noted in that case that the word "year"[7] is given many meanings, and it is sometimes defined to *41 mean a 365-day or 12-month period regardless of when it begins and ends. Newman v. Fair Lawn, 31 N.J. at 284. Indeed, this court applied the term "year" in this sense in Bd. of Ed. of Manchester Twp. v. Raubinger, 78 N.J. Super. 90 (App.Div. 1963). There we held that the term "three consecutive calendar years" specified in the then tenure statute, N.J.S.A. 18:13-16, meant 36 months of continuous employment regardless of when the employment began. Id. at 97. Thus, the term "calendar year" was construed in the tenure statute, which is part of the school laws, as meaning any 12-month period. The current statute is N.J.S.A. 18A:28-5.
In our view the Legislature intended to make clear that a school year was not intended, and that what was intended was a period of time the equivalent of a calendar year. That is a period of up to 12 full months, see Bd. of Ed. of Manchester Twp. v. Raubinger, supra, but no longer. We are of the opinion that the period begins with the date of the injury or first absence resulting from the personal injury and continues for one calendar year therefrom. But we see no reason to exclude payments for intermittent absences causally connected and arising from the same injury within "the period of up to one calendar year" from the date of the injury, which we hold is the period created by the statute. Accordingly, the determination of the State Board that the meaning of the phrase "period of such absence for up to one calendar year" encompasses only the 12-month period from the date of injury or first absence is affirmed.
Appellant further argues that the State Board erred in determining that the Board could recover payments already made to her after the one-year period ended because there had been no hearing on the matter, there was no counterclaim asserted and the Board had waived such claim by having made the payments. The Commissioner relied upon Bd. of Ed., Passaic v. Bd. of Ed., Wayne, 120 N.J. Super. 155 (Law Div. 1972), aff'd o.b. (App.Div. 1973) (unreported), certif. den. 64 N.J. 508 (1974), in permitting *42 recoupment by the Board. In that case the school boards were permitted to recoup funds erroneously paid because they had been paid under a mistake of law. It was held that "a municipality or subdivision thereof, as an instrument of the people, should [not] be bound by a misinterpretation of the law by the authorities in charge." Bd. of Ed., Passaic v. Bd. of Ed., Wayne, supra, 120 N.J. Super. at 164. At issue therein was a question of law involving interpretation of a statute, and that could be resolved by summary judgment.
In the case before us the Board had raised the applicability of the statute and had urged that it was only required to pay for the period of one calendar year from the injury or inception of absence. Even though it had not specifically sought reimbursement, the Commissioner could conclude that the Board had paid certain of the benefits to appellant because of an erroneous interpretation of N.J.S.A. 18A:30-2.1. We must be mindful of the fact that public funds are involved. An erroneous payment due to a misinterpretation of the law inures to the detriment of the taxpayers of the school district. Hence, on balance equity demands that the Board be permitted to recoup moneys paid under such circumstances and rectify its error.
Affirmed.
BRODY, J.A.D., dissenting.
N.J.S.A. 18A:30-2.1 is essentially a statute of monetary, not temporal limitation. The limitation is expressed as follows:
[H]is employer shall pay ... for the period of such absence "for up to one calendar year....".
The same kind of limitation appears in N.J.S.A. 34:15-12(a), which provides workers' compensation temporary disability benefits. The limitation there is expressed as follows:
This compensation shall be paid during the period of such disability, not however, beyond 400 weeks.
Although the language of the two statutes is not identical, it conveys the same meaning: benefits are to be paid for a *43 continuous period or for intermittent periods of disability until the period or periods add up to the time specified.
We gave that interpretation to the Workers' Compensation Act language in Colbert v. Consolidated Laundry, 31 N.J. Super. 588, 594-595 (App.Div. 1954), where we cited with approval Johnson v. Mills, 39 N.J.L.J. 306 (Com.Pl. 1916). Johnson was decided without benefit of L. 1921, c. 230, § 3, the source statute of N.J.S.A. 34:15-38, which later confirmed that interpretation and fine-tuned the method of calculation. Referring to the words "shall be paid during the period of such disability, not, however, beyond three hundred weeks," the judge in Johnson said:
The words "during the period of such disability" seem to indicate more than length of time during which compensation shall be paid; they seem to declare and determine that such compensation shall be paid, as the words clearly state, "during the period" of such disability. This language answers conclusively the question as to when such compensation shall be paid. It has not been paid during the period of disability in this case. [Johnson v. Mills, supra, 39 N.J.L.J. 311]
Applying that interpretation to N.J.S.A. 18A:30-2.1, I would say that its benefits have not been paid "for the period of such absence" in this case.
After noting that "the express function of N.J.S.A. 18A:30-2.1 is to complement workers' compensation benefits for a strictly limited time period," we gave "accident" as used in N.J.S.A. 18A:30-2.1 the same definition given that word under the Workers' Compensation Act. Theodore v. Dover Bd. of Ed., 183 N.J. Super. 407, 415-416 (App.Div. 1982). We were moved then by the express reference in N.J.S.A. 18A:30-2.1 to the Workers' Compensation Act and by the Statement accompanying N.J.S.A. 18A:30-2.1, which states that its purpose is "to provide leave of absence with pay in cases of injuries or illness arising from employment and subject to the Workmen's Compensation Act." There is no reason to turn our back on Theodore and hold that the two statutes are no longer to be read in pari materia.
I adhere to the view that N.J.S.A. 18A:30-2.1 provides excess temporary disability benefits complementing workers' compensation *44 temporary disability benefits. Entitlement to both should depend on the same criteria. The only significant difference is that workers' compensation temporary disability benefits are payable for up to 400 weeks whereas Title 18A benefits are only payable for up to one year.
N.J.S.A. 18A:30-2.1 should not be read to establish a limited period of eligibility running continuously for one year from the date of the accident or even from the first qualifying absence. In giving the statute that reading, the majority unfairly penalizes conscientious employees who return to work during the period but are later disabled by the accident.
I would reverse and remand to calculate N.J.S.A. 18A:30-2.1 benefits accordingly and order whatever payment and adjustment of petitioner's sick-leave account may be appropriate.
NOTES
[1] This is the phrase used in N.J.S.A. 18A:30-2.1.
[2] Sick leave was the subject of the decision in Piscataway Tp. Bd. of Ed. v. Piscataway Maint. & Custodial Ass'n, 152 N.J. Super. 235 (App.Div. 1977). There the union tried to compel arbitration on a contract provision purporting to provide unlimited disability benefits. It was held that such a contract provision was ultra vires the board.
[3] Sick-leave days are accumulated at the rate of not more than 15 days per year. N.J.S.A. 18A:30-7. Not having to charge an absence to sick leave effectively increases the compensation for an absence covered by N.J.S.A. 18A:30-2.1 for employees with unused accumulated sick leave time.
[4] Under N.J.S.A. 34:15-29 there is a set off of disability benefits or payments against amounts received in workers' compensation. Applying that section would result in no temporary disability payments being made in workers' compensation because petitioner's salary here was not reduced. However, by virtue of N.J.S.A. 18A:30-2.1 Williams received, or should have received, her normal salary reduced by the workers' compensation temporary disability award. See Young v. Western Electric Co., 189 N.J. Super. 1 (App.Div. 1983), certif. granted, 95 N.J. 175 (1983).
[5] N.J.S.A. 18A:30-2.1 was originally enacted in slightly different form in L. 1959, c. 175. It was amended by L. 1967, c. 168 (the most recent amendment) to change the discretionary nature of the payment to a mandatory one by substituting the word "shall" for the word "may." Other than a brief statement attached to the bill noting that change, there is little in the way of legislative history for this section of the law.
[6] We consider these as subperiods. However, this may be contrasted with petitioner's argument that she is entitled to be paid for absences totalling up to 365 days under the statute no matter how many years are involved or have elapsed from the time of the injury.
[7] The word "year" is defined in N.J.S.A. 1:1-2 as a calendar year unless "it be otherwise expressly provided or there is something in the subject or context repugnant to such construction."